The STATE of Ohio, Appellee,

v.

HURON, Appellant.

[Cite as *State v. Huron* (1990), 70 Ohio App.3d 414.]

Court of Appeals of Ohio,
Montgomery County.

No. 12102.

Decided Nov. 21, 1990.

*Joe Cloud,* City Prosecutor, for appellee.

*Barbara V. Thompson,* County Public Defender, for appellant.

FAIN, Judge.

Defendant-appellant, Jeffrey D. Huron, appeals from his conviction for obstructing official business in violation of city of Vandalia Ordinances Section 606.14. Huron contends that the evidence against him was insufficient to sustain a conviction of the offense charged, so that his conviction is contrary to law. Upon the authority of *Dayton v. Rogers* (1979), 60 Ohio St.2d 162, 14 O.O.3d 403, 398 N.E.2d 781, we agree. Accordingly, Huron's conviction will be reversed, and he will be ordered discharged.

## I

Vandalia police officers Goldshot and Armstrong were attempting to locate Kaye Lynn Milles, the runaway daughter of Pam Hall. Hall suspected that Milles would be likely to be in the company of Huron and Christopher Bryant when Bryant went to his place of work in the evening.

That evening, Huron, Bryant and Tammie Marlowe were in Bryant's car on the way to Bryant's place of employment. Bryant parked his car in his employer's parking lot, and Goldshot and Armstrong pulled their police cruiser up to Bryant's car.

Goldshot and Armstrong questioned Huron concerning Milles' whereabouts. Huron told the officers that he had not seen her in three or four days and that he did not know where she was.

With Bryant's consent, the officers searched the trunk of Bryant's car. Clothing was found in the trunk that, according to Milles' mother, belonged to Milles. Marlowe claimed that she had recently come into ownership of these clothes.

There was conflicting testimony as to whether the police officers believed Huron's statement that he had not seen Milles for several days and did not know where she was. In any event, the officers released Huron, Bryant, and Marlow, and made no search of the adjoining area.

Later that evening, officers Goldshot and Armstrong found Milles locked in Bryant's car, which was still in his employer's parking lot. Milles testified that she had been in Bryant's car, but that she had jumped out and run into the woods when she saw her mother and the police cruiser.

Huron was charged with obstructing official business, in violation of Vandalia Ordinances Section 606.14, based upon the theory that he intentionally misled the investigating police officers by telling them, not under oath, that he had not seen Milles recently, and that he had no knowledge of her whereabouts. After a bench trial, the trial judge stated for the record that he believed, from the evidence, that Huron was lying when he told the police officers that he had not seen Milles in several days and that he had no knowledge of her whereabouts. The trial court found that the investigating police officers were impeded in their efforts to find Milles, and found Huron guilty of the charge. Huron was sentenced accordingly. From his conviction and sentence, Huron appeals.

## II

Huron's sole assignment of error is as follows:

"The trial court's decision, that Huron's statement purposely obstructed official business by hampering or impeding a police officer, was against the manifest weight of the evidence."

Although his assignment of error is framed in terms of the "manifest weight of the evidence," it is clear from Huron's argument in support of his assignment of error that he is really contending that there is no evidence to support his conviction, and that his conviction is contrary to law.

Huron was convicted of violating Vandalia Ordinances Section 606.14, which provides as follows:

"OBSTRUCTING OFFICIAL BUSINESS.

"(a) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his or her official capacity, shall do any act which hampers or impedes a public official in the performance of his or her lawful duties.

"(b) Whoever violates this section is guilty of Obstructing Official Business, a misdemeanor of the second degree. Punishment shall be as provided in Section 698.02. (O.R.C. 2921.31)"

Both parties recognize that R.C. 2921.31, which defines the statutory offense of obstructing official business, is essentially identical to Vandalia Ordinances Section 606.14.

Huron relies upon *Dayton v. Rogers* (1979) 60 Ohio St.2d 162, 14 O.O.3d 403, 398 N.E.2d 781. The holding in that case, as set forth in the syllabus, is as follows:

"The making of an unsworn false oral statement to a police officer is not punishable conduct within the meaning of Revised Code of General Ordinances of the city of Dayton, Section 131.02(A). (R.C. 2921.31[A], construed.)"

In *Dayton v. Rogers*, as in the case before us, a police officer conducting an investigation within the scope of his official duties asked a citizen a question, material to his investigation, and was told a lie. Although the Supreme Court noted, in its opinion, that under the particular facts of that case, it did not appear that the lie actually "hampered or impeded" a public official in the performance of his lawful duties, that was not essential to the holding in that case. The holding was that a statement, even a deliberate misstatement, is not an "act" for purposes of R.C. 2921.31(A). Consequently, the Supreme Court held that the making of a false, unsworn statement to a police officer cannot be the basis for a charge of obstructing official business under the statute.

Since the offense of obstructing official business as proscribed in Vandalia Ordinances Section 606.14 is identical to the offense as proscribed in R.C.

2921.31(A), we are obliged to follow *Dayton v. Rogers* and hold that the mere making of a false, unsworn statement to a police officer may not be the basis for finding a violation of the ordinance.

At the oral argument in this case, the prosecution argued that Huron's conduct involved more than merely lying to the police. The prosecution argued that there was evidence that Huron had instructed the other persons in the car to get their stories straight and to join him in lying to the police. But this was communication, not an act, pursuant to the holding in *Dayton v. Rogers*.

The prosecution also argued that the car in which Milles was a passenger stopped to let her out when it could be seen that the police and Milles' mother were waiting in the distance. Although Huron was not the driver of the car, the prosecution argues that the trial court could have inferred that Huron instructed the driver to stop the car so that Milles could get out. It is at least equally reasonable to infer that Milles instructed the driver to stop to let her out. Where an innocent inference competes with a guilty inference, the innocent inference must be excluded beyond reasonable doubt. *State v. Kulig* (1974), 37 Ohio St.2d 157, 66 O.O.2d 351, 309 N.E.2d 897.

Finally, the prosecution argued that a holding adverse to it in this case would "send a message" to the young people of Vandalia that it is o.k. to lie to the police. It must be remembered that *Dayton v. Rogers* was concerned solely with the proper construction of the statute proscribing obstructing official business. Huron was charged with violating a similarly worded Vandalia ordinance. There is nothing to prevent the Vandalia City Council from amending its ordinance to include lying to a police officer within the scope of its prohibitions.

Huron's sole assignment of error is sustained.

### III

Huron's sole assignment of error having been sustained, and this court being satisfied that there is no possible construction of the evidence that would support a conviction, the trial court's judgment will be reversed, and Huron will be ordered discharged.

*Judgment reversed*
*and defendant discharged.*

WILSON and BROGAN, JJ., concur.